THE FIRST NATIONAL BANK OF CHICAGO, Plaintiff-Appellant, *v.* V. B. BOELCSKEVY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—1950

Opinion filed June 29, 1984.

Joseph M. Russell, of Law Department of First National Bank of Chicago, of Chicago, for appellant.

Mary Jane Edelstein, of Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff First National Bank of Chicago appeals from the trial court's order granting the motion of defendant Robert Knight to quash service of process for lack of *in personam* jurisdiction. The underlying action, brought in the circuit court of Cook County, seeks to enforce an indebtedness against certain guarantors, among them defendant Robert Knight; all other guarantors have appeared generally. Facts pertinent to our decision follow.

In January of 1979, North American Aviation Holdings, Ltd. (holding company), bought an 80% ownership interest in Walston Aviation Sales, Inc. (Walston), an aircraft dealership located in East Alton, Illinois. Defendant is one of three natural persons who own the holding company, and he resides in Florida. The purchase agreement provided for Walston's continued financing by plaintiff. Defendant stated during his deposition that he recalled discussing the guaranty only once, at plaintiff's Chicago, Illinois, office in January or February of 1979. Defendant telephoned the Walston office weekly in 1979 and 1980 and daily in 1981. He visited Walston's office several times in 1980, monthly in early 1981, and biweekly later in 1981. Defendant actively participated in the selection and removal of Walston's officers and reviewed Walston's marketing programs.

One of plaintiff's loan officers stated by way of affidavit that he and defendant, among others, attended a meeting on February 7, 1979, at which he advised defendant that any future financing of Walston required the execution of his personal guaranty. Plaintiff's loan officer gave defendant the guaranty agreement, which defendant executed in Florida and mailed to plaintiff in Chicago.

The guaranty agreement provides that it shall be governed by the laws of the State of Illinois, and pledges defendant's prompt payment of Walston's debts to plaintiff as evidenced by certain "demand notes." The notes are payable at plaintiff's office in Chicago, Illinois, and plaintiff alleges that the funds were disbursed from its Chicago office to Walston's office in East Alton.

Plaintiff filed its complaint in the circuit court of Cook County on June 11, 1982. Defendant appeared specially and presented his motion to quash service of process for lack of *in personam* jurisdiction on December 21, 1982. Following limited discovery, submission of memoranda, and argument, the trial court granted defendant's motion and dismissed the action as to him. On July 12, 1983, the trial court certi-

fied the order and plaintiff filed its notice of appeal.

OPINION

■ The sole issue in this appeal is whether defendant transacted business in Illinois which gave rise to plaintiff's cause of action so as to subject defendant to suit in the courts of our State. Although defendant has not submitted an appellee's brief in this court, we will exercise our inherent power to decide the merits of this appeal in the interest of justice. (See *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.) Because we believe that the trial court took too narrow a view, and because we find ample transaction of business in the record to support *in personam* jurisdiction over defendant in Illinois, we hold that the trial court erred in quashing service and dismissing defendant from the case, and we reverse.

Section 2—209(a) of the Code of Civil Procedure (hereinafter the long-arm statute) provides in pertinent part:

> "(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this State; ***."

(Ill. Rev. Stat. 1983, ch. 110, par. 2—209(a).)

In *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847, our supreme court interpreted the substantially identical predecessor provision of the Civil Practice Act. The *Cook* court noted that Illinois' long-arm statute was not coextensive with the minimum contacts due process standard described in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154; rather, the court suggested a twofold analysis of *in personam* jurisdiction. We should first look to the meaning of our statute or common law doctrine; only then should we reach the due process aspects of exercising jurisdiction. *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197-98, 429 N.E.2d 847.

It is important to note that *Cook* represented no fundamental narrowing of the long-arm statute or retreat from its liberal construction (see *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673), but merely observed that the statute's liberal purpose must be construed within its terms. (See *Ronco, Inc. v. Plastics, Inc.* (N.D. Ill. 1982), 539 F. Supp. 391, 398.) The *Cook* court held that no basis for jurisdiction

existed where the negotiations which occurred in Illinois were unrelated to plaintiff's cause of action (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 198, 429 N.E.2d 847), a result plain on the face of section 2—209(a).

A wide variety of factors have been considered in determining whether a defendant has transacted business in Illinois, three of which are relevant here. When a defendant comes to Illinois and engages in negotiations of some substance regarding the transaction from which the cause of action arises, then the defendant submits to jurisdiction under the long-arm statute. (See *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 853-55, 387 N.E.2d 1272, and cases cited therein.) A defendant transacts business in Illinois when substantial performance of his or her contractual duties is to be rendered in Illinois. (See *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 333 N.E.2d 562; *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 18-19, 308 N.E.2d 78.) And a defendant who invokes the benefits and protections of Illinois law in the contractual relationship may be said to transact business in Illinois for jurisdictional purposes. See *Ronco, Inc. v. Plastics, Inc.* (N.D. Ill. 1982), 539 F. Supp. 391, 396; *Aetna Casualty & Surety Co. v. Looney* (1981), 98 Ill. App. 3d 1057, 1060, 424 N.E.2d 1347.

In the instant case, these factors weigh heavily in favor of subjecting defendant to jurisdiction. Defendant voluntarily attended a meeting at plaintiff's office in Chicago, during which the guaranty was discussed. Plaintiff asserts that the guaranty was given to defendant in the course of this meeting for his review and execution. As to the guaranty, Illinois was the only situs of negotiation. Further, the guaranty in terms and essence pledges defendant's personal performance of Walston's promise to pay the demand notes; the demand notes are payable at plaintiff's Chicago office. Therefore, the guaranty unambiguously requires performance in Illinois. In addition, the guaranty voluntarily signed by defendant states that it shall be governed by Illinois law: defendant will have the protection of Illinois law in this suit and, if positions were reversed, would have the benefit of enforcing it against plaintiff. Negotiation, performance and invocation of Illinois law all indicate transaction of business in Illinois, hence jurisdiction here.

Moreover, the "transaction" is not limited, legally or logically, to the guaranty. In *O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173, the seventh circuit considered similar facts and found that the Illinois long-arm statute conferred jurisdiction. In that case, plaintiff sought to enforce personal guaranties against residents

of Oklahoma, Arkansas, Texas and Florida. The court considered defendants' activities with respect to the underlying transaction and stated:

> "While the guarantors received no direct consideration, it appears there was inducement in connection with their projected interest in World Travelers for them to want eventual financing of the airplane to be purchased. They should not be in the position, even though indirectly, to enjoy the fruit but to disavow the situs of the tree from which the fruit was derived. The purchase money bore an Illinois badge sufficient with the other facts hereinbefore set out to constitute a prima facie showing of transacting business within the state of Illinois." (*O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173, 1177; accord, *Commercial Discount Corp. v. King* (N.D. Ill. 1981), 515 F. Supp. 988, 992.)

Similarly, this court held in *Aetna Casualty & Surety Co. v. Looney* (1981), 98 Ill. App. 3d 1057, 424 N.E.2d 1347, that Illinois courts had jurisdiction over an Oklahoma defendant in a suit based on an indemnity agreement, where the agreement secured performance of a construction contract in Illinois.

Here, defendant personally guaranteed a debt flowing from a bank with its principal operations in Illinois to a business with its principal operations in Illinois. Defendant was physically present at the bank and the business, in order to transact profitable business which impacted directly on the citizens and institutions of Illinois. An integral part of this activity was financing. It is a strange result indeed which permits defendant "to enjoy the fruit but to disavow the situs of the tree from which the fruit was derived." (*O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173, 1177.) We conclude that defendant transacted business in Illinois which gave rise to this cause of action, so as to justify the exercise of *in personam* jurisdiction over him.

■ Although we do not have the benefit of defendant's analysis on appeal, we have carefully considered his arguments to the trial court and have found them to be meritless. Defendant posited that facts not directly related to the guaranty were irrelevant; that his activities in his corporate capacity could not form a basis for personal jurisdiction; and that all of his personal business was transacted in Florida. Defendant relied upon *Hurletron Whittier, Inc. v. Barda* (1980), 82 Ill. App. 3d 443, 402 N.E.2d 840, and it is true that the court there stated that "the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdic-

tion over that person." (82 Ill. App. 3d 443, 447, 402 N.E.2d 840.) We note that the *Hurletron* court stated that a more important consideration was lack of relation between defendant's conduct in Illinois and the cause of action, a proposition which is supported by the cases cited therein, and so the statement concerning representative capacity may be seen as *dictum*. However, we believe that defendant's argument and the broad language in *Hurletron* blur the distinction between personal jurisdiction and personal liability. Personal jurisdiction refers to power of a court to bind the parties to its judgments (Black's Law Dictionary 1030 (5th ed. 1979); see *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158); personal liability involves the responsibility of a person to pay or perform which exposes personal assets to judgment, as opposed, for example, to corporate assets. (Black's Law Dictionary 1030 (5th ed. 1979).) We see no reason to inject personal liability concepts into the law of jurisdiction.

In any case, our analysis of defendant's transaction adequately meets his arguments. We do not hold that facts unrelated to defendant's guaranty may be used to subject him to jurisdiction; rather we hold that the transaction underlying the guaranty was so related to the guaranty that defendant's acts with respect to such transaction can be said to have "given rise" to the cause of action. Defendant's execution of a personal guaranty in the circumstances of this case constituted "transaction of any business" within Illinois, despite the fact that the guaranty was signed in Florida.

Finally, we believe that the courts of Illinois may exercise jurisdiction over the person of defendant fully in harmony with the due process clause. The constitutional requirement was set forth in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]"

In this case, defendant has had far more contact with Illinois than the minimum required for due process. Defendant negotiated the guaranty in Illinois, received it here, and returned it to the lending institution here. The guaranty is to be performed in Illinois and governed by Illinois law. The debt which is secured by the guaranty required disbursement of funds from an Illinois lending institution to an Illinois

business operation, and both acquisition and financing of that business were negotiated in part in Illinois. We can discern no fairer nor more just result than to subject defendant to *in personam* jurisdiction in the courts of Illinois and to require him to defend himself in this action.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

MEJDA, P.J., and SULLIVAN, J., concur.