**R.T. SCHUBERT, Plaintiff,**

v.

**GAY & TAYLOR, INC. and T. Bruce Tilley, Defendants.**

**No. 89 C 1090.**

United States District Court, N.D. Illinois, E.D.

Aug. 7, 1989.

Horace W. Jordan, Van Duzer, Gershon, Jordan & Petersen, Chicago, Ill., for plaintiff.

C. Thomas Hendrix, French, Rogers, Kezelis & Kominiarek, P.C., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

On May 31, 1989, this court dismissed this case when plaintiff's counsel failed to appear for a status hearing. At this time, the court grants plaintiff's motion to vacate the order dismissing the case for want of prosecution. Having reinstated the case, the court will now consider defendant's motion to dismiss or transfer the case. For the reasons stated herein, this court grants defendant's motion to dismiss.

## FACTS

Defendant Gay & Taylor, Inc. ("G & T"), a complete risk services company incorporated in North Carolina,[1] maintains its principal place of business in Winston–Salem, North Carolina. G & T has offices in 24 states, including Illinois, Georgia, and South Carolina. Defendant T. Bruce Tilley has served as President of G & T since December 1985. Tilley resides in Winston–Salem, North Carolina.

In 1986, Forum Insurance Co. ("FIC") entered into contract negotiations with G & T. FIC proposed to retain G & T to adjust approximately 5,000 claim files previously handled by Quantex, Inc. In response to this proposal, G & T agreed to establish an office in Atlanta, Georgia for the purpose of managing FIC's claim files. Moreover, in order to induce FIC to enter into a contract, G & T promised to hire an experienced insurance adjuster to manage the new Atlanta office. Then in October 1986, Tilley met with plaintiff R.T. Schubert in Schaumburg, Illinois. Schubert, an experi-

---

1. For the purpose of assessing a motion to dismiss, this court must accept as true the complaint's allegation that G & T is incorporated in North Carolina. Defendants contend, however, that G & T is incorporated in Georgia. In any event, the parties' dispute over the site of G & T's incorporation does not affect the court's analysis of defendants' motion to dismiss.

enced insurance adjuster who currently lives in Akron, Ohio, had worked at G & T's office in Myrtle Beach, South Carolina since June 1986. During their meeting in Schaumburg, Tilley informed Schubert of G & T's plans to open a new Atlanta office following the successful completion of contract negotiations with FIC. Tilley then offered Schubert the position of Atlanta office manager. According to Tilley, Schubert would begin this new job as soon as the Atlanta office opened. To persuade Schubert to accept the Atlanta assignment, Tilley allegedly indicated that G & T would pay Schubert $8,000 a month plus living and travel expenses from the time he started working in Atlanta until October 28, 1987. Based on these representations, Schubert accepted Tilley's offer. A few weeks later, when contract talks between G & T and FIC resumed, G & T stated that it had hired an experienced insurance adjuster to manage the Atlanta office it planned to establish. Shortly thereafter, in January 1987, G & T and FIC reached agreement on a contract.

Relying on the representations Tilley made in Schaumburg, Schubert postponed a planned foreign trip, moved from Myrtle Beach to Atlanta, and began working at G & T's new Atlanta office in January 1987. Then on February 10, 1987, G & T terminated Schubert. Despite losing his job, Schubert insisted that he should continue to receive his monthly salary of $8,000 through October 1987. G & T repeatedly rejected Schubert's requests for payment following his termination. According to the complaint, G & T also refused to reimburse Schubert for various expenses he incurred during his employment at G & T's offices in Myrtle Beach and Atlanta.

## DISCUSSION

Schubert's three-count complaint essentially alleges that defendants used Schubert's expertise to attract FIC's business, then discarded him after FIC signed a contract with G & T. Count I of the complaint alleges that G & T breached its October 1986 employment contract with Schubert by failing to pay his monthly salary after terminating him. Count II asserts that Schubert suffered damages because he reasonably relied on misrepresentations made by Tilley. Finally, in Count III, Schubert seeks reimbursement of expenses he incurred while working for G & T in Myrtle Beach and Atlanta.

In response to these claims, defendants move to dismiss Schubert's complaint. They contend that this court lacks personal jurisdiction over Tilley. Defendants also argue that venue does not properly lie in Illinois. Alternatively, pursuant to 28 U.S.C. § 1404(a), defendants move to transfer this case to the United States District Court for the Northern District of Georgia.

■ In analyzing defendants' motion to dismiss, this court would normally decide the issue of personal jurisdiction before considering the propriety of venue. Nonetheless, "when there is a sound prudential justification for doing so, ... a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979). To determine whether it can exercise personal jurisdiction over Tilley, this court would have to resolve a close question concerning the application of the fiduciary shield doctrine. Under this doctrine, an Illinois court may not assert personal jurisdiction over an individual whose sole contact with the state consisted of acts he performed as a fiduciary of a corporation. *Olinski v. Duce*, 155 Ill.App.3d 441, 443–44, 108 Ill.Dec. 237, 239, 508 N.E.2d 398, 400 (1987). Arguably, the fiduciary shield doctrine insulates Tilley from the jurisdiction of any court in Illinois; but state law does not clearly dictate such a result. To complicate matters further, an Illinois appellate court recently reversed a lower court's ruling that application of the fiduciary shield doctrine is mandatory. The appellate court ruled that Illinois courts may exercise discretion when determining whether to apply the fiduciary shield doctrine to a particular case. *Washburn v. Becker*, Nos. 1–88–0889, 1–88–2621, —— Ill. App.3d ——, —— Ill.Dec. ——, —— N.E.2d —— (Ill.App. July 17, 1989). This recent

ruling only increases the uncertainty surrounding the applicability of the fiduciary shield doctrine in Tilley's case. Therefore, rather than grapple with a thorny jurisdictional issue involving a legal doctrine that continues to evolve, this court will initially examine the question of venue. Ultimately, the court need not resolve the difficult issue of personal jurisdiction because Schubert has chosen an inappropriate venue for his lawsuit.

Federal jurisdiction over Schubert's complaint rests entirely on diversity of citizenship. Consequently, to maintain an action in federal court, Schubert may bring suit "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). Schubert does not reside in the Northern District of Illinois; neither do the two defendants.[2] Thus, Schubert can bring suit in this court only if his claims arose in this district.

When analyzing the question of where a claim arose, federal courts have employed a variety of tests.[3] In recent years, however, most courts (including this one) have adopted a "weight of contacts" test for determining the site where a claim arose. *See, e.g., Commercial Lighting Products, Inc. v. United States District Court,* 537 F.2d 1078 (9th Cir.1976); *Heller Financial, Inc. v. Shop-A-Lot, Inc.,* 680 F.Supp. 292 (N.D.Ill.1988); *Coface v. Optique du Monde, Ltd.,* 521 F.Supp. 500 (S.D.N.Y.1980); *Oce-Industries, Inc. v. Coleman,* 487 F.Supp. 548 (N.D.Ill.1980): *B.J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091 (E.D.Pa.1977). The "weight of contacts" test entails "an examination of the defendant's contacts with the various fora related to the plaintiff's cause of action. The plaintiff's claim arises (and venue is therefore proper) in the forum in which the defendant's contacts are most significant." *Heller Financial,* 680 F.Supp. at 294–95. Applying this test to the instant case, this court concludes that Schubert's various claims did not arise in Illinois. Defendants' only contact with Illinois consisted of Tilley's two-day meeting with Schubert in Schaumburg in October 1986. Although the parties may have formed a contract in Illinois, all of the other significant events pertaining to Schubert's contract claim occurred in Georgia. The alleged contract established Georgia as the site of the parties' employment relationship. Schubert moved to Georgia in order to perform his obligations under the contract. Moreover, defendants allegedly breached the contract in Georgia when they terminated Schubert without pay. As for Schubert's tort claim, while Tilley may have made certain misrepresentations in Illinois, the injury stemming from these alleged misrepresentations took place in Georgia when G & T terminated Schubert. Finally, Schubert's claim relating to unreimbursed expenses arises from events that happened in Georgia and South Carolina, not Illinois.

During the course of their alleged mistreatment of Schubert, defendants maintained more significant contacts with the state of Georgia than with any other forum. Consequently, Schubert's claims arose in Georgia. Based on this conclusion, the Northern District of Illinois cannot provide an appropriate venue for Schubert's suit. Because this lawsuit cannot properly proceed in this district, this court dismisses Schubert's complaint pursuant to 28 U.S.C. § 1406(a).

## CONCLUSION

For the foregoing reasons, after vacating its previous order dismissing this case for want of prosecution, this court grants defendants' motion to dismiss Schubert's complaint.

IT IS SO ORDERED.

**2.** When evaluating the propriety of venue under § 1391, the Seventh Circuit has held that a corporation resides exclusively in the state of its incorporation. *Reuben H. Donnelley Corp. v. Federal Trade Commission,* 580 F.2d 264, 270 (7th Cir.1978). In accordance with this rule, G & T, which is not incorporated in Illinois, does not reside in this state.

**3.** For a brief survey of some of these tests, see *Mercantile Financial Corp. v. UPA Productions,* 551 F.Supp. 672, 675 n. 2 (N.D.Ill.1982).