Raymond J. **PERRY** and Louis Zezoff, Jr., Plaintiffs,

v.

Terrence E. **DELANEY,** individually and in his capacity as U.S. Marshal for the Southern District of Illinois, United States Marshals Service, General Security Services Corporation, Eduardo Gonzalez, Stacia Hylton, Andrew Pierucki, Jim Marble, Charles E. Witcher and Joseph Zak, all being sued in their capacities as individuals, Defendants.

No. 97–3001.

United States District Court,
C.D. Illinois,
Springfield Division.

May 19, 1998.

J. William Lucco, Michael A. Shaheen, Lucco Brown & Mudge, Edwardsville, IL, for Raymond J. Perry and Louis Zezoff, Jr.

Laura J. Jones, U.S. Atty., Fairview Heights, IL, L. Lee Smith, Westervelt Johnson Nicoll & Keller, Peoria, IL, Thomas Walsh, U.S. Attorney's Office, Chicago, IL, William M. Walsh, Sonnenschein Nath & Rosenthal, St. Louis, MO, Robert Boonin, Butzel Long, Detroit, MI, Pamela M. Zauel, Butzel Long, Ann Arbor, MI, for Terry Delaney, U.S. Marshals Service, General Security Services Corp., Terrence Delaney, Eduardo Gonzalez, Stacia Hylton, Andrew Pierucki, Jim Marble, Charles E. Witcher and Joseph Zak.

## OPINION

RICHARD MILLS, District Judge.

Two former Court Security Officers claim that their employer's vice president—in his individual capacity—deprived them of their statutory and constitutional rights.

The vice president argues that his only contacts with Illinois were due to his representative capacity and therefore he is protected by the "fiduciary shield doctrine."

The Court agrees.

The Motion to Dismiss for Lack of Personal Jurisdiction is allowed.

## I. BACKGROUND

Raymond J. Perry and Louis Zezoff, Jr., ("Plaintiffs") worked as Court Security Officers ("CSOs") in the Southern District of Illinois. They were employees of General Security Services Corporation ("GSSC"), a private corporation that entered into a contract with the United States Marshal Service ("USMS") to provide uniformed guard security services at the federal courthouse buildings in the Seventh Circuit, including the federal courthouse in East St. Louis, Illinois.

The Complaint alleges that on May 2, 1996, after they had completed that day's work, Plaintiffs were told by Jim Marble, the GSSC contract manager, that the USMS had pulled their credentials and instructed them to turn in their equipment. On May 7, 1996, Plaintiffs received letters by express mail signed by GSSC vice president Andy Pierucki informing them of their termination as CSOs. The letters stated that the USMS had directed Plaintiffs' removal and cited violations of the contract between the USMS and GSSC, specifically Section 3.22, failure to demonstrate the highest standards of personal and moral conduct, and Section 3.25, violation of security procedures and regulations. Plaintiffs claim they were never provided with notice or copies of the contractual sections allegedly violated by them.

On May 15, 1996, Plaintiffs sent letters to GSSC's headquarters and to the USMS's general counsel requesting an independent review of their termination. On July 17, 1996, the USMS's General Counsel responded to Plaintiffs' correspondence, suggesting that GSSC was solely responsible for their termination. GSSC never responded.

Plaintiffs originally filed suit on September 18, 1996. On December 9, 1997, Plaintiffs filed their Second Amended Complaint, which, for the first time, included a *Bivens*[1]

---

**1.** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999,*   *29 L.Ed.2d 619 (1971).*

action against Andrew Pierucki, the vice president of GSSC, as well as other individuals. Plaintiffs claim that Pierucki and others acted jointly and in concert in pulling Plaintiffs' credentials, which ultimately resulted in Plaintiffs' termination. Plaintiffs allege that this action deprived them of their clear statutory and constitutional rights.

Pierucki moves to dismiss the claim against him for lack of personal jurisdiction. Pierucki claims he owns no property or assets in Illinois, has no office in Illinois, and transacts no business in Illinois. His only contacts with Illinois consist of exchanged letters and other documents, all in his corporate capacity.

## II. LEGAL STANDARD

When the motion to dismiss is based on lack of personal jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction over each defendant. *Nelson by Carson v. Park Indus., Inc.,* 717 F.2d 1120 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). Plaintiff need only make a prima facie showing to avoid dismissal. *Id.* 717 F.2d at 1123.

## III. ANALYSIS

The Seventh Circuit has held that in federal question cases, a plaintiff must show two things to demonstrate that the court has personal jurisdiction over the defendant: 1) that haling the defendant into court accords with the Due Process Clause of the Fifth Amendment; and 2) that defendant is amenable to service of process from the court. *United States v. De Ortiz,* 910 F.2d 376, 381–82 (7th Cir.1990).

### A.

Under the Fifth Amendment, "due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state or other geographical area." *Id.* (citing *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671–72 (7th Cir.1987), *cert. denied* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); *Fitzsimmons v. Barton,* 589 F.2d 330, 332–35 (7th Cir.1979)). The rationale is that a federal court in a federal question case is exercising the power of the United States. *Lisak,* 834 F.2d at 671. This "national contacts" test is easily satisfied and not often contested. *See Merrill Lynch Business Financial Serv., Inc. v. Marais,* 1995 WL 608573 (N.D.Ill. October 12, 1995) (citing *Brujis v. Shaw,* 876 F.Supp. 975 (N.D.Ill.1995)). *See also Boston Chicken, Inc. v. Market Bar–B–Que, Inc.,* 922 F.Supp. 96, 97–8 (N.D.Ill.1996).

■ "A defendant 'has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court' if he resides or conducts business on American soil." *Vlasak v. Rapid Collection Sys., Inc.,* 962 F.Supp. 1096, 1099 (N.D.Ill.1997) (citing *Fitzsimmons v. Barton,* 589 F.2d 330, 333 (7th Cir.1979)). Pierucki resides and conducts business in the United States. Therefore, the Court finds that Pierucki has sufficient contacts with the United States.

### B.

■ Even if the national contacts test is met, a defendant must also be amenable to service of process. Service of process in both diversity and federal question cases is governed by Federal Rule of Civil Procedure 4(k). It provides:

> (1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant
>
> (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or, . . .
>
> (D) when authorized by a statute of the United States.

Fed.R.Civ.P. 4(k)(1)(A, D). Some federal legislation provides for nationwide service of process. *See Vlasak,* 962 F.Supp. at 1099. When federal legislation does not provide for nationwide service of process, service of process is "authorized only when the defendant would be amenable to service under the long-arm statute of the state in which the district court sits." *Id.* at 1099–1100.

█ Because in the instant case there is no federal legislation that provides nationwide service of process, the Court must determine whether Pierucki is amenable to service under the Illinois long-arm statute, 735 ILCS 5/2–209. Plaintiffs appear to claim that Pierucki committed a tortious act within Illinois by the actions directed at Plaintiffs. 735 ILCS 5/2–209(a)(2). Plaintiffs argue that it is reasonable for him to answer for this action in Illinois.

Pierucki, in his motion to dismiss, claims that his only contacts with Illinois consist of exchanged letters and documents—all in his corporate capacity. Because his only contacts with the forum state were performed in his representative capacity as GSSC vice president, he claims he is protected by the fiduciary shield doctrine.

█ In *Rollins v. Ellwood,* 141 Ill.2d 244, 565 N.E.2d 1302, 152 Ill.Dec. 384 (1990), the Illinois Supreme Court formally recognized the fiduciary shield doctrine. The court held that it was

> unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdiction power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal.

*Id.* at 280, 565 N.E.2d at 1318, 152 Ill.Dec. at 400. "The fiduciary shield doctrine is discretionary in nature and should be applied only where equity demands it." *Brujis,* 876 F.Supp. at 980(citing *Washburn v. Becker,* 186 Ill.App.3d 629, 542 N.E.2d 764, 767, 134 Ill.Dec. 418, 421 (1989) *appeal denied* 127 Ill.2d 643, 545 N.E.2d 134, 136 Ill.Dec. 610 (1989)).

In response to Pierucki's motion to dismiss, Plaintiffs argue that in certain instances, the fiduciary shield doctrine will not shield the defendant from Illinois jurisdiction: 1) where the defendant is the "alter ego" of the corporation; 2) where the defendant owns most of the corporate stock; and 3) where the defendant's discretionary actions cause tortious harm in Illinois. The Court also notes that the shield is withdrawn if the defendant acted to serve his own personal interests. *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir.1994), *cert. denied* 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995).

Plaintiffs appear to rely solely on the issue of discretion and argue that Pierucki's discretionary acts affecting Plaintiffs and his position at GSSC make it fair for Illinois to call him here to defend his action. Plaintiffs argue that Pierucki had the authority and discretion to hire and fire them. Because he is a ten-year vice president of GSSC and a pivotal player in the firing of Plaintiffs, because he had the authority and discretion to have Plaintiffs terminated, because he deliberately aimed his tortious actions at Plaintiffs and those acts culminated in their firing, it is inappropriate for him to now hide behind the fiduciary shield doctrine.

It does not appear to be settled whether a fiduciary's exercise of discretion automatically removes the protection of the fiduciary shield doctrine. *See Brujis,* 876 F.Supp. 975. In *Brujis,* the court examined numerous cases relating to the issue of discretion. The court noted that the majority of cases that addressed the issue "generally conclude that the shield should not apply where the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction." *Id.* at 978. The *Brujis* court only found one case in which the court rejected the idea of an exception to the fiduciary shield for discretionary acts, *Rice v. Nova Biomedical Corp.,* 38 F.3d 909.

In *Rice,* the court stated, in dictum, that "[i]f [the defendant's] action in coming into Illinois to fire and defame [the plaintiff] was done solely on behalf of [the defendant's employer], he is under the fiduciary shield and this regardless of whether he exercised discretion rather than merely carrying out precise orders mechanically." *Rice,* 38 F.3d at 912. The *Brujis* court rejected this statement as a resolution of the issue and instead held that it believed that the Illinois Supreme Court would examine the nonresident's discretion as an important fact, but not a determinative one, in deciding whether an Illinois

court's jurisdiction was proper. *Brujis,* 876 F.Supp. at 979.

Therefore, adopting the reasoning of *Brujis,* this Court will examine the additional factor of "discretion" in determining whether it can lawfully exercise personal jurisdiction over Pierucki. The other factors to consider include personal gain and ownership of most of a corporation's stock. *Id.* 876 F.Supp. at 980. "[T]he test is whether, on the basis of the defendant's conduct in Illinois or acts affecting Illinois interests, it would be fair to require him to defend an action in Illinois." *Id.*

In his first Declaration, attached to his motion to dismiss, Pierucki states that he is a resident of Minnesota. He also states that GSSC is a Minnesota corporation with its headquarters in Bloomington, Minnesota. Pierucki's only office is at GSSC's headquarters. Pierucki asserts that he was not involved in the investigation that resulted in the USMS's decision to have Plaintiffs removed for work. His only contact with the Plaintiffs regarding their employment as CSOs was by letter informing them of USMS's actions as to their no longer being allowed by the USMS to work as CSOs and the fact that GSSC had no other position in the area for them to be assigned. He claims the letters were sent solely as part of his responsibilities as GSSC's vice president.

Pierucki's Second Declaration, attached to his Reply, provides that he has never been a shareholder of GSSC, has never been a member of the Board of Directors of GSSC, has never had an ownership interest in GSSC, has never had his personal funds commingled with the funds of GSSC and that GSSC is not in existence or used for his personal benefit. Additionally, he claims that once the USMS sought the removal of Plaintiffs as CSOs, he was compelled, in his role as vice president of GSSC, to remove them from those positions. Thus, he had no discretion in this context. Because there was no employment for Plaintiffs in the area, GSSC terminated their employment. Making and communicating such decisions is part of his job responsibility. Finally, he states that he did not gain personally from Plaintiffs' terminations and that

the action was taken on behalf of his employer, GSSC.

Applying the fairness standard, the Court finds that Pierucki is protected by the fiduciary shield doctrine. The circumstances of this case are distinguishable from the *Brujis* case. In *Brujis,* one of the defendants owned a vast majority of the company's shares and therefore stood to benefit from the company's activities in Illinois. 876 F.Supp. at 980. Both defendants were senior corporate officers in a position to decide whether those contacts with Illinois should be made at all. *Id.*

That is not the case here. Pierucki has never been a shareholder of GSSC and would not benefit from GSSC's activities in Illinois. Additionally, there is no indication that he had any role in GSSC's decision to do business in Illinois. Pierucki's only contact with Illinois was through letters sent to Plaintiffs. Those letters were sent as a direct result of his position with GSSC. Although Pierucki generally has discretion in hiring and firing employees, it appears that he did not have that discretion here.

Moreover, even if Pierucki did have—and exercised—discretion, the other factors weigh heavily against subjecting him to jurisdiction in Illinois. There is no showing of personal gain, as Pierucki has presented unrefuted evidence that he has no financial interest in GSSC. Additionally, GSSC is a Minnesota corporation, not an Illinois corporation. *Cf. Banwell v. Illinois College of Optometry,* 981 F.Supp. 1137 (N.D.Ill.1997)(fiduciary shield doctrine did not apply where defendant voluntarily accepted a position on a board of an Illinois corporation; it was fair, just, and reasonable to require defendant to defend the action in the Illinois courts); *People ex Rel. Morse v. E & B Coal Co., Inc.,* 261 Ill.App.3d 738, 634 N.E.2d 436, 199 Ill.Dec. 597 (1994)(fiduciary shield doctrine did not apply; defendant freely chose to accept directorship with knowledge that company was an Illinois corporation conducting business in Illinois).

### C.

Consequently, the Court finds that it would be unfair, unjust and unreasonable to

require Pierucki to defend this action in Illinois. Therefore, equity demands that the fiduciary shield doctrine apply to protect Pierucki from this Court's jurisdiction. Defendant Andrew Pierucki's Motion to Dismiss For Lack of Personal Jurisdiction is ALLOWED and he is hereby dismissed from the case, with prejudice.